UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KMG INTERNATIONAL, BV,

    Plaintiff,

v.                                  Case No. 8:19-cv-00333-02SPF

FUN LIGHT AMUSEMENTS, SRO,
CONFOLDING GROUP, SRO, and
ALAN FERGUSON,

    Defendants.
_____/

## ORDER

This matter comes to the Court on Defendants Fun Light Amusements, SRO (Fun Light) and Confolding Group, SRO's (Confolding) Motion to Dismiss Plaintiff KMG International, BV's (KMG) Complaint. Dkt. 25. Plaintiff has filed an opposition in response. Dkt. 33. The Court **DENIES** the motion.

## BACKGROUND

This action arises from Defendants' alleged infringement of KMG's patented design for its amusement ride, "Freak Out." Dkt. 1 at 4. Plaintiff alleges that on February 5–8, 2019, Defendants "market[ed], promot[ed], advertis[ed], offer[ed] for sale, and attempt[ed] to sell" a knockoff version of KMG's product, the "Extreme" ride while attending the International Independent Showmen's

Association trade show (IISF) in Gibsonton, Florida. *Id.* at 4–5. KMG alleges against Defendants unfair competition pursuant to 15 U.S.C. § 1125(a) (Count I), Florida common law unfair competition (Count II), violations of Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201 *et seq.*) (Count III), and infringement of KMG's '144 Patent under 35 U.S.C. § 271 (Count IV). Dkt. 1 at 6–13.

In Counts I–IV KMG asserts, among other things, that Defendants falsely designated the origin of their amusement ride designs by unlawfully using Plaintiff's swing attraction's "ornamental features, designs, design features, advertising and promotion material, [and] photographs" in order to "pass off its inferior imitation products as that of Plaintiff." Dkt. 1 at 9–10. Plaintiff further alleges that Defendants distributed marketing brochures which included a "confusingly similar" knockoff version of Plaintiff's amusement ride that displayed the names and logos of both Confolding and Fun Light at the IISF trade fair. *Id.* at 4. Allegedly, as a proximate result of Defendants' "willful[]" misrepresentations and other imitative conduct (*id.* at 8, 11), Plaintiff suffered damages and therefore seeks injunctive relief, compensatory and punitive damages, court costs, and reasonable attorney's fees, *id.* at 8, 10–11, 13.

Defendant Confolding manufactures amusement rides, Dkt. 25-1 at 2 ¶ 3, and Defendant Fun Light manufactures and distributes amusement rides, *id.* at 5 ¶

3. Both move to dismiss the Complaint for lack of personal jurisdiction. Dkt. 25. Confolding also moves to dismiss for insufficient service of process. *Id*. In support of their motion, Confolding and Fun Light submitted similar declarations from their owners/legal representatives, Jiri Husek and Frantisek Kolomaznicek, respectively. Dkt. 25-1. Mr. Kolomaznicek was present at the Gibsonton, Florida trade show. *Id.* at 5 ¶ 8.

According to Husek, Confolding is a corporation that was "formed and exists under the laws of the Czech Republic" with its principal place of business in Brno, Czech Republic. *Id.* at 1 ¶ 2. Kolomaznicek similarly declares that Fun Light is a corporation that was formed and exists under the laws of the Czech Republic with its principal place of business in Brandys nad Labem, Czech Republic. *Id.* at 4 ¶ 2. Husek and Kolomaznicek additionally declare that Confolding and Fun Light:

- do not have headquarters or manufacturing facilities in Florida;
- distribute the "Extreme" ride exclusively in Europe;
- do not conduct any business in Florida;
- do not have offices, employees, documents, or assets in Florida;
- do not lease property in Florida;
- do not have a mailing address, telephone number, bank account, agents or distributors in Florida;
- do not have any business contracts to supply goods or services with or involving residents of Florida;
- have never sold or licensed any of their amusement rides in Florida;
- have never marketed, sold, or offered to sell the "Extreme" ride for use in Florida;

Dkt. 25-1.

Defendants' declarations differ in two material respects: (1) Fun Light acknowledges proper service (Dkt. 25-1 at 5–6 ¶ 8) whereas Confolding alleges insufficient service. *Id.* at 6 ¶ 9. Specifically, Confolding asserts that it has no agents in Florida or the United States for purposes of service of process, summons, and complaints (*Id.* at 2 ¶ 8) and that it did not appoint or authorize any persons, codefendants or otherwise, to accept service on its behalf. *Id.* And (2) Fun Light admits to selling approximately ten rides over the last five years in the United States, although none in Florida (*Id.* at 5 ¶ 7), whereas Confolding does not. Confolding's declaration conflicts with its earlier filing, which admitted that Defendant Ferguson is its local agent, and admitted that Confolding was present at the Gibsonton trade show "as a business visitor and technical support only." Dkt. 14 at 2.

## LEGAL STANDARD

Plaintiff bears the burden of "establishing a prima facie case of personal jurisdiction over a nonresident defendant." *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-21897-civ, 2013 WL 1100028, at *2 (S.D. Fla. Mar. 15, 2013). Where a defendant submits affidavits to the contrary, "the plaintiff is required to substantiate jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir.

1986). However, only specific factual denials that challenge the factual allegations raised by the plaintiff, and not mere conclusory declarations, warrant shifting the burden from the defendant back to the plaintiff. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1276–77 (11th Cir. 2009). A district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by defendant's affidavits. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). Where the plaintiff's complaint and the defendant's affidavits conflict, "the district court must construe all reasonable inferences in favor of the plaintiff." *Thomas v. Brown*, 504 F. App'x 845, 847 (11th Cir. 2013) (citation omitted). Here, Confolding's submissions conflict with themselves. *Compare* Dkt. 14, *with* Dkt. 25-1.

## DISCUSSION

The inquiry for personal jurisdiction is two-fold: "(1) whether personal jurisdiction exists over the nonresident defendant . . . under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). The Court finds that because of their vague and conclusory nature, Defendants' declarations opposing personal jurisdiction fail to successfully shift the burden back to Plaintiff. Because KMG's allegations satisfy the requirements of Florida's

5

long-arm statute and due process, the Court may lawfully assert personal jurisdiction over Defendants.

I. Personal Jurisdiction

a. Florida's Long-Arm Statute

Under Florida's long-arm statute, Florida may assert personal jurisdiction over a nonresident defendant through either specific or general jurisdiction. Fla. Stat. § 48.193. Plaintiff argues that Defendants have submitted to specific jurisdiction in Florida by "[c]omitting a tortious act within this state" under section 48.193(1)(a)(2), Florida Statutes, because (1) unfair competition is an intentional tortious act, and (2) the marketing of knock off products at trade shows is a tortious act, even without sales. Dkt. 33 at 5-6. Defendants contend that jurisdiction cannot rest on tortious conduct because they were not "reasonably aware that use [of the product] in Florida would occur." *See* Dkt. 25 at 9 (citation omitted).

i. Defendants have allegedly committed a tortious act in Florida.

Under section 48.193(1)(a)(2), Florida Statutes, Florida may assert personal jurisdiction over nonresident defendants when they "[c]ommit[] a tortious act" within the state.[1] In addition, Section 43(a) of the Lanham Act—one of the laws

---

[1] Plaintiff alternatively argues that even if Florida's long-arm statute did not support personal jurisdiction, the Court could nonetheless appropriately exercise jurisdiction pursuant to the federal long-arm statutes. Dkt. 33 at 11. Because jurisdiction here is satisfied under Florida's long-arm statute, the Court need not reach the question of federal long-arm jurisdiction allowed under Federal Rules of Civil Procedure 4(k)(2). *See Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, SA*, 197 F.3d 1070, 1074 (11th Cir. 1999).

under which Plaintiff is suing—prohibits "false designation[s] of origin" of a product or service, and Florida's long-arm statute considers such conduct tortious. *Maurer Rides USA, Inc. v. Beijing Shibaolai Amusement Equip. Co., Ltd.*, No. 6:10-cv-1718-Orl-37KRS, 2014 WL 3687098, at *3 (M.D. Fla. July 24, 2014).

Because "false[ly] designati[ng] [the] origin" of a product or service is itself tortious conduct in Florida under the Lanham Act, and KMG plausibly alleges in its Complaint that Defendants "distributed sales, marketing, and/or promotional brochures, . . . which included a confusingly similar knockoff version of KMG's 'Freak Out' ride," KMG has established a prima facie case of specific jurisdiction under Florida's long-arm statute. Dkt. 1 at 4. Defendants rely heavily on *Structural Panels, Inc. v. Texas Aluminum Indus., Inc.*, 814 F. Supp. 1058 (M.D. Fla. 1993) to argue that unless Plaintiff can plausibly allege facts that Defendant used infringing promotional material with intent to sell the product in Florida, jurisdiction should be negated. Dkt. 25 at 9–10. The Court disagrees.

In *Structural Panels*, a patentee filed a patent infringement action in Florida on an alleged, non-resident infringer who then moved to dismiss the action on jurisdictional grounds. 814 F. Supp. at 1064. The court rejected the assertion of personal jurisdiction because the plaintiff had failed to submit sufficient evidence that the defendant had marketed the product in Florida or otherwise committed a tortious act within the state. *See id.* at 1065. Furthermore, although the defendant

7

brought a sample of the allegedly infringing product into the forum, he did so only once at an individual's request and maintained that the panels were not for sale in Florida. *See id.* at 1063.

In this case, however, Plaintiff credibly sets forth that Defendants attended, and brought promotional, marketing materials to, the IISF trade show in Gibsonton, Florida. And Defendants do not state that their attendance was at any request. Defendants further proffer no evidence suggesting that the marketed goods in Gibsonton were not for sale. Instead, Defendants provided generalized declarations that conclusively assert they "[have] never marketed . . . the 'Extreme' ride for use in Florida." Dkt. 25-1 ¶ 7. Furthermore, because Plaintiff plausibly alleged that Defendants marketed and distributed promotional material, supported by exhibits attached to the Complaint containing photographs of the allegedly infringing material, the Court rejects the Defendants' arguments.

      ii. <u>Defendants' declarations do not adequately state specific facts to shift the jurisdictional burden back to KMG.</u>

In the absence of discovery, a plaintiff must establish a prima facie case of personal jurisdiction over the nonresident defendant by presenting sufficient jurisdictional evidence. *See Cable/Home Commc'n. Corp. v. Network Prods., Inc.*, 902 F.2d 829, 857 (11th Cir. 1990). A court must accept the facts alleged in a plaintiff's complaint as true, to the extent that they are not contradicted by a defendant's affidavits. *Id.* at 855. However, such affidavits shift the burden back

onto the plaintiff to support jurisdictional allegations "only when the defendant's affidavit is legally sufficient to effect the shift." *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 199 F. App'x 738, 742–43 (11th Cir. 2006). In other words, a defendant must sufficiently challenge a plaintiff's jurisdictional assertions. *See Structural Panels*, 814 F. Supp. at 1064.

Here, Defendants' submitted declarations were not adequately specific to shift the jurisdictional burden back onto Plaintiff. In *United Techs.*, for example, the plaintiff alleged that the defendant was responsible for the theft and sale of the plaintiff's aircraft engine. 556 F.3d at 1266. In that case, the defendant's affidavits in support of their jurisdictional assertion were sufficiently specific to shift the burden back onto the plaintiff because, in them, the defendant denied engaging in specific alleged conduct such as "negotiating a price for [] blueprints," "providing 'a portion of [] cash . . . as payment," and "arrang[ing] . . . to ship blueprints to [co-defendant] in Belgium." *See id.* at 1277.

In contrast, rather than deny specific conduct related to distributing allegedly infringing materials at the Gibsonton trade show, Defendants instead state, among other things, that they do not conduct any business in Florida, that they do not have any contracts to supply goods or services in Florida, and that they have never "marketed, sold, or offered to sell the 'Extreme' ride for use in Florida or the United States." Dkt. 25-1 at 2, 5. Although such denials might be relevant for a

9

separate basis to challenge the reach of the long-arm statute (for example, section 48.193(1)(a)(1)), such denials fail to adequately rebut Plaintiff's jurisdictional allegations regarding tortious conduct under (a)(2).

Accordingly, under section 48.193(1)(a)(2), Defendants are subject to jurisdiction because they do not specifically deny attending the IISF trade show or distributing brochures that displayed allegedly infringing product designs. This is true regardless of whether Defendants intended to market designs for use in Florida. And even if Defendants had contradicted Plaintiff's allegations with greater factual specificity, the Court still would have construed all reasonable inferences in favor of Plaintiff, *see Madara*, 916 F. 2d at 1514—a heavy presumption to rebut, especially considering the exhibits Plaintiff has set forth. *See* Dkt. 1-1 – 1-8. Confolding's conflicting filings in this regard do not help its cause.

    b. <u>Due Process</u>

To determine whether the exercise of specific jurisdiction fulfills due process requirements, courts must consider: (1) "whether the plaintiffs have established that their claims 'arise out of or relate to' at least one of the defendant's contacts with the forum"; (2) "whether the plaintiffs have demonstrated that the defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state"; and (3) "whether the defendant has 'ma[de] a compelling case that the exercise of jurisdiction would violate traditional notions of fair play

and substantial justice.'" *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1313 (11th Cir. 2018) (quotations omitted). Plaintiff bears the burden of establishing the first two prongs and, if the plaintiff does so, the defendant must make a compelling case that the exercise of jurisdiction would violate the third prong. *See Louis Vuitton*, 736 F.3d at 1355.

> i. "Arise Out of or Relate to"

To determine whether Plaintiff's claims arise out of or relate to one of Defendants' contacts with Florida, the Court looks to the "'affiliation between the forum and the underlying controversy,' focusing on any 'activity or . . . occurrence that [took] place in the forum State.'" *Waite*, 901 F.3d at 1314 (quoting *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (citation omitted)). In the Eleventh Circuit, a tort "'arise[s] out of or relate[s] to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." *Id.* at 1314 (quoting *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222–23 (11th Cir. 2009)).

Defendants here voluntarily entered the state of Florida, attended a trade show where goods of this sort are marketed, and allegedly showcased infringing designs. *See* Dkt. 1 at 4–5. Specifically, Defendants allegedly distributed promotional brochures containing names and logos of KMG's "Extreme" ride—conduct almost identical to the defendants' conduct in *Maurer Rides*.

11

In that case, an Italian amusement park ride manufacturer and its U.S. distributor sued two Chinese amusement park ride manufacturers for unfair competition under the Lanham Act for distributing promotional materials that depicted the plaintiffs' products as their own. *See Maurer Rides*, 2014 WL 3687098, at *1. The court found that the plaintiffs' claims related to the defendants' contacts with the forum because all relevant connections involved the alleged infringing conduct. *See id.* at *4. Likewise, in the present case, Defendants' contacts (also allegedly infringing promotional efforts) while present at the IISF trade show similarly provide the basis for all KMG's claims. Accordingly, KMG's claims for unfair competition arise out of and relate to Defendants' in-state, tortious activity while present at a Florida trade show.

ii. <u>Purposeful Availment</u>

Under the purposeful availment prong, a court may apply the *Calder*[2] "effects test" for intentional torts. *See Louis Vuitton*, 736 F.3d at 1356. Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment when the tort: "(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.*[3] Unfair competition, along with Plaintiff's other claims, is

---

[2] *Calder v. Jones*, 465 U.S. 783, 789–90 (1984).
[3] Alternatively, the traditional purposeful availment analysis looks to whether a defendant's contacts with the forum state "(1) are related to the plaintiff's cause of action; (2) involve some act by which he purposefully availed himself of the privileges of doing business within the forum; and (3) are such that

12

an intentional tort and should therefore be evaluated under the effects test. *See Promex, LLC v. Perez Distrib. Fresno, Inc.*, No. 09-22285-CIV, 2010 WL 3452341, at *5 (S.D. Fla. Sept. 1, 2010).

Accepting the allegations in Plaintiff's complaint as true and weighing any factual contentions in its favor, the Court finds that Fun Light and Confolding aimed tortious conduct at Florida by voluntarily entering the state of Florida, participating in an international trade show, and distributing promotional brochures with a confusingly similar knockoff version of Plaintiff's product. The Court rejects Defendants' conclusory arguments that they have "no contacts whatsoever with the State of Florida" and they did not make a "single sale" in Florida. Dkt. 25 at 1.

Even if Defendants had made no sales in Florida, they cite no cases in support of their proposition that lack of sales alone is dispositive in determining whether a defendant aimed conduct at a particular forum. Rather, the tortious act of distributing brochures with an infringing design is itself contact aimed at Florida. *See Maurer Rides*, 2014 WL 3687098, at *4. Defendants should have anticipated that the harm resulting from the likelihood of consumer confusion was likely to be suffered in Florida. *See also Tobinick v. Novella*, No. 9:14-CV-80781, 2015 WL

---

the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1356-57 (citations omitted). The Court need not run through this analysis in light of its finding under *Calder*.

13

328236, at *7 (S.D. Fla. Jan. 23, 2015) (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (2008) in finding *Calder* satisfied where an "intentional tort [is] aimed at a specific individual in the forum whose effects were suffered in the forum").

In *Maurer Rides*, the lone act of making an infringing advertisement available to trade show attendees constituted tortious conduct in Florida. 2014 WL 3687098, at *4. In that case, the court found that the defendants had purposefully availed themselves because they should have anticipated that such conduct would cause harm to the consuming public in the form of consumer confusion. *Id*. Because these Defendants' alleged conduct could similarly result in consumer confusion, Fun Light and Confolding should have anticipated that their promotional efforts in Florida, aimed at Florida, could have subjected them to a Florida court's jurisdiction. Here, Defendants' actions were intentional, occurred in the State of Florida, and caused harm that Defendants should have anticipated would be suffered in Florida. Accordingly, purposeful availment is satisfied.

      iii.  <u>Fair Play and Substantial Justice</u>

"When a defendant seeks to rely on the 'fair play and substantial justice' factor to avoid the exercise of jurisdiction . . . , 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Minsurg Int'l, Inc. v. Frontier Devices, Inc.*, No. 8:10-cv-1589-T-33EAJ, 2011 WL 1336400, at *6 (M.D. Fla. Apr. 7, 2011) (citation omitted). And

14

the fair play and substantial justice factor "is to be applied sparingly." *Id.* (citations omitted). When assessing whether an assertion of personal jurisdiction comports with due process, courts "consider these factors: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Louis Vuitton*, 736 F.3d at 1358 (citation and internal quotation marks omitted).

Because "'modern methods of transportation and communication' have significantly reduced the burden on foreign nationals who are forced to litigate in the United States, only in 'rare cases' do the 'minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction.'" *Maurer Rides*, 2014 WL 3687098, at *5 (citation omitted). Here, Defendants emphasize in their memorandum that they "[have] no offices, employees, documents, or contacts whatsoever[,]" and, as such, their burden of defending a lawsuit in Florida would be "substantial." Dkt. 25 at 12. However, according to Plaintiff, Defendant Fun Light represents on its website that co-Defendant Alan Ferguson has "represented Fun Light Amusements for 8 [y]ears in the USA" and also that "[Fun Light] [has] many [a]musement [r]ides that have been working in [the] USA for [y]ears." *See* Dkt. 1-1. Likewise, Confolding has stated in this record that Mr. Ferguson is its local agent. Dkt. 14 at 2.

15

Unrefuted by Defendants is KMG's allegation that Defendants "admitted" to attending trade shows in Tampa over the last few years, Dkt. 33 at 10, as well as KMG's two composite exhibits that indicate Defendants previously attended trade shows in the United States, Dkt. 1-2 at 3–4. Furthermore, even if Defendants had presented strong evidence that defending in Florida would be more burdensome than conducting routine marketing efforts and/or attending trade shows, KMG's interest in acquiring relief from the alleged patent infringement would outweigh such a burden. *See Minsurg*, 2011 WL 1336400, at *7.

Defendants further argue that there is "no reason that Florida should have a significant interest" in resolving a dispute involving a corporation with "absolutely no contacts with the state." Dkt. 25 at 12. However, the Court disagrees that simply because an alleged, nonresident patent infringer may have minimal contacts with a state, a court in that state would therefore not have jurisdiction to adjudicate claims involving infringement of a U.S. protected patent inside that state's territory. Furthermore, although KMG is a foreign company organized under the laws of the Netherlands (Dkt. 1 at 1), a federal court in Florida nonetheless has a strong interest in protecting foreign plaintiffs from infringement that might occur while present in that state—especially those who have lawfully applied for and obtained a valid patent through the United States Patent and Trademark Office (*Id.* at 4).

Accordingly, the assertion of specific personal jurisdiction here does not offend notions of fair play and substantial justice because Plaintiff's interest in relief outweighs any burden on Defendants, and Florida has a strong interest in policing infringing conduct that allegedly occurred in Florida.

II. Service of Process

Plaintiff's service of Confolding was upon Mr. Kolomaznicek, a representative of Fun Light,[4] who was present at the trade show. Dkt. 25-1 at 4-5 ¶¶ 2, 8. Plaintiff also served Mr. Ferguson who was also present. Dkt. 21. Defendant Confolding argues that service of process is insufficient because (1) Plaintiff served Fun Light (i.e. Kolomaznicek), a separate entity, and (2) Plaintiff failed to meet the requirements of the Hague Convention which require, among other things, that Confolding may "only be served in the Czech Republic through the Czech Republic central authority" and that all documents must be translated into the Czech language. Dkt. 25 at 13–15.

In its opposition to Confolding's motion, Plaintiff argues that service on Confolding was waived because Confolding first filed an answer. Dkt. 14. In the Answer, Confolding appears to state that it offered its wares in Gibsonton to international customers. *See id.* at 2. Also in the Answer, and contrary to its later

---

[4] The sworn return of service states that Kolomaznicek told the process server that he owned Confolding. Dkt. 22-1.

declaration, Confolding stated that Mr. Ferguson was its local agent ("our one and only representative in that area"). *Id.* Accordingly, Plaintiff argues both that Confolding waived service by answering, and that Confolding admitted its local agent was Mr. Ferguson who was served. *See* Dkt. 21; Dkt. 33 at 12. Section 48.081(2), Florida Statutes, permits service upon "any agent transacting business for it in this state" for a foreign corporation with no other representatives in-state.

The court record clearly shows that Confolding received notice of this suit and filed an Answer requesting dismissal on the merits—all without objecting to service. Dkt. 14. Approximately sixty days later Confolding, now with counsel, moved to dismiss, *inter alia*, for bad service. Dkt. 25.

"The procedural requirement of service of process must be satisfied before a federal court may exercise jurisdiction over a defendant." *See Developers Sur. & Indem. Co. v. Italian Cast Stone, Inc.*, No.: 8:16-cv-3491 T-24 TGW, 2017 WL 3113469, at *1 (M.D. Fla. May 5, 2017). Normally, a party may move for dismissal under Rule 12(b)(5) for insufficient service of process. Fed. R. Civ. P. 12(b)(5). However, Federal Rule of Civil Procedure 12(h)(1) provides that if the defense of insufficient service of process is not included in a defense motion or a responsive pleading, it is waived. *Lake City Assocs. LLC v. Windsor Arms, LLC*, No. 3:13-cv-782-J-39JBT, 2014 WL 12609863, at *2 (M.D. Fla. Jun. 19, 2014).

Nowhere in Confolding's Answer (filed well before its motion to dismiss) did Confolding object to or even reference service of process. Dkt. 14. By submitting a responsive pleading on the merits without objecting to service of process, Confolding has waived its objections to service of process. Accordingly, the Court need not determine whether Plaintiff properly served Confolding with process. By appearing before the Court and answering the Complaint on the merits without objecting to service of process, Confolding has waived its defense of insufficient service of process pursuant to Rule 12(h)(1). Consequently, the Court **DENIES** Defendants' Motion. Dkt. 25.

## CONCLUSION

The Court **DENIES** Defendants' Motion. Dkt. 25.

**DONE AND ORDERED** at Tampa, Florida, on July 25, 2019.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record